No. 48,441

LAURENCE FINLEY, *Appellant,* v. ETHEL McCLURE, Administratrix
of the Estate of D. JESSIE F. RILEY, Deceased, *Appellee.*

(567 P.2d 851)

Opinion filed July 11, 1977.

*Harker E. Russell,* of Kahrs, Nelson, Fanning, Hite, and Kellogg, of Wichita, argued the cause, and *H. W. Fanning,* of the same firm, was with him on the brief for the appellant.

*Gary House,* of Robbins and House, of Sedan, argued the cause, and *Riley Robbins,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a remainderman against the administratrix of a life tenant to recover the proceeds from the sale of wheat which were payable as crop rent on certain farmland. The plaintiff-appellant is Laurence Finley. The defendant-appellee is Ethel McClure, administratrix of the estate of D. Jessie F. Riley, deceased.

The case was submitted to the district court on an agreed statement of facts which essentially is as follows: Prior to her death on September 24, 1973, Jessie Riley was the owner of a life estate in certain farmland located in Wichita county, Kansas. The plaintiff Laurence Finley owned the remainder interest in this farmland. In 1973 the life tenant Riley leased the farmland for agricultural purposes to Wayne Marcy and Arthur McCowan. Under the terms of the lease the lessees, Marcy and McCowan, were required to pay to Jessie Riley as rent one-third of the grain harvested by the lessees. Two weeks before Riley's death the lessees planted wheat on the property. After the death of Riley the crop was harvested by the tenants and deposited in an elevator under the names of Marcy and McCowan and the plaintiff Finley. Later by order of the probate court and without notice to the remainderman Finley, the wheat was sold and the proceeds of

one-third of the wheat were paid to the defendant McClure as administratrix of the estate of the life tenant Jessie Riley. Finley objected to the final settlement of the Riley estate, claiming that he was entitled to the proceeds from the sale of the wheat then in the hands of the administratrix. By agreement the controversy was certified to the district court. There the issue to be determined was stated to be as follows: Whether the rent share of the wheat was owned by the life tenant Jessie Riley and now by her estate, or is owned by the remainderman, Laurence C. Finley, or should be apportioned between the life tenant's estate and the remainderman. The district court awarded the entire proceeds from the rent share of the wheat to Ethel McClure, as administratrix of the estate of the life tenant Riley. The remainderman Finley filed a timely appeal to this court.

We have considered the points raised by the defendant-appellee challenging the jurisdiction of the court and find them to be without merit. Hence we will proceed directly to the basic issue presented on appeal: "Did the trial court err in granting to the life tenant's estate the entire proceeds from the sale of the one-third rent share of the wheat and in failing to apportion the proceeds between the estate of the life tenant and the remainderman?" The controversy must be determined on the basis of the doctrine of emblements which comes into play when a life tenant of farmland dies before certain annual crops have been harvested. "Emblements" are corn, wheat, rye, potatoes, garden vegetables, and other crops which are produced annually, not spontaneously, but by labor and industry. The doctrine of emblements is of common law origin and was developed in reference to the ownership of such crops in the event of termination of the estate or tenancy of the person who planted them. Under the common law, if the life tenant sows a crop and dies before its maturity, the crop goes to his personal representative under the doctrine of emblements. The doctrine or right of emblements entitles one who holds land for a period subject to termination at a time which he cannot ascertain beforehand to remove from the land, after the termination of his tenancy, the annual crops or emblements which he has planted thereon prior to termination, provided termination is brought about without any fault on his part or without any act of his intended to bring about such a result. The basis of the doctrine is the justice of assuring to the tenant

compensation for his labor, and the desirability of encouraging husbandry as a matter of public policy. (*Sprick v. Beach,* 188 Kan. 296, 362 P.2d 24.)

The doctrine is applied in controversies between the estate of a life tenant and remainderman. If the life tenant himself sows the crop and dies before it is mature, it goes to his personal representative under the doctrine of emblements. If the life tenant sells the crop during his lifetime and the life tenant dies before the crop is harvested, the grantee is entitled to the crop under the doctrine of emblements. (*Sprick v. Beach,* supra.) The lessee of a life tenant is also protected by the doctrine and is entitled to the crops or his share thereof in the event his estate is terminated by the death of the life tenant during the term of the lease. If the life tenant dies between seedtime and harvest after having procured a "cropper" to operate the farm for a share of the crop, the life tenant is regarded as having had possession of the land and as having owned the growing crop or having an interest therein, and the crop passes to his estate, perhaps in conjunction with the cropper, the remainderman taking nothing. (*Wyandt v. Merrill,* 107 Kan. 661, 193 Pac. 366, *reh. den.* 108 Kan. 204, 194 Pac. 634, citing *Vawter v. Frame,* 48 Ind. App. 481.) In each of the above instances the estate of the life tenant is entitled to his share of the matured crop on the theory that the life tenant at the time of his death was the owner, or at least part owner, of the growing crop.

A difference of opinion arises in this area where the life tenant leases land, with the rent payable with a share of the crop to be raised on the land by the lessees, and the life tenant dies before the crop is harvested. In this situation there is a decided split of authority among the various jurisdictions as to whether the estate of the life tenant or the remainderman is entitled to the crop share rent. Some courts take the view that the life tenant's estate is not entitled to the crop share rent but that it belongs to the remainderman, principally on the grounds that title to crops growing on leased land is in the lessee, not in the life tenant, that share rent is not due until the crop is harvested, and that the rent belongs to the owner of the fee at the time it becomes due. Other courts take the position that the life tenant, with respect to the landlord's share of the growing crop, was the owner of an undivided interest in the crop growing on the land at the time of his death and that such interest was personal property, title to which passes to his

estate and not the remainderman, and similarily, that the life tenant's estate is entitled to the share rent, since such interest in the crop attaches after the crop commences to grow and is an inchoate interest which the life tenant may sell before maturity of the crop and which ripens into full ownership with such maturity. In a number of states the legislature by statute has settled the issue by providing for the apportionment of the crop rent or by creating in the life tenant a property right in the immature crop which entitles his estate to the crop rent share. A discussion of the problem, with cases cited from many jurisdictions, may be found in 21 Am. Jur.2d, Crops, § 27, and annotations at 76 A.L.R.2d 162, and 47 A.L.R.3d 784. In all of the cases the deciding factors seem to be whether at the time of the death of the life tenant the growing crops are to be considered as real or personal property and whether the life tenant owns an existing property interest in the crops.

Like a number of other jurisdictions this court has struggled with the problem and encountered difficulty. The rule in Kansas has not been made clear, because it developed through a series of four cases, three of which disapproved of or overruled preceding cases in the series. In order to arrive at an understandable rule these cases should be discussed and analyzed. The first case was *Wyandt v. Merrill,* supra, which was an action brought by the estate of a life tenant against a lessee to recover the crop rental under a sharecrop arrangement. It was held that since the life tenant died before the crops had matured, his estate was not entitled to the crop share reserved, and this was said to be so notwithstanding a statute declaring that a lessor whose rent is to be paid in a share of the crop should be deemed to be the owner of such share, since, the court ruled, such ownership does not attach until the maturity of the crop. The court explained that under the common law, if a life tenant sows a crop and dies before its maturity, it goes to his personal representative under the doctrine of emblements, and that if he procures a "cropper" to operate the farm for a share of the crop and dies between seedtime and harvest, the life tenant is regarded as having had possession of the land and as having owned the growing crop or an interest therein, and the title passes to his estate, the remainderman taking nothing. But, the court stated, if the life tenant leases the land for a cash rent payable at a date subsequent to the harvest and dies

before the maturity of the crop, the lease comes at once to an end, the remainderman becoming entitled to possession of the land, and the lessee has the right of ingress and egress for the purpose of caring for and harvesting the crops. After examining the facts of the case the court concluded that the relationship between the life tenant and the share-cropper was that of landlord and tenant, not landowner and cropper, and thus his estate had no right to the share reserved as rent. The court gave no indication whether the remainderman would be entitled to that share.

The second case, *Snodgrass v. Carlson et al.,* 117 Kan. 80, 230 Pac. 83, disapproved that portion of *Wyandt* in which it was held that under the statute, the lessor's ownership of the crop where the rent was to be paid in a share of the crop did not attach until the maturity of the crop. The court in *Snodgrass* took the view that the statutory lien of a landlord for rent attaches at the beginning of the tenancy and, in the case of crops, from the commencement of their growth, whether or not the rent is then due. Next, in *Cooper v. Cyr,* 141 Kan. 236, 40 P.2d 375, the court stated that it appeared that *Wyandt* was expressly overruled by *Snodgrass.* The court in *Cooper* then held that there should be an apportionment in accordance with the laws of the state and the growth of the crop where the life tenant entered into a lease by which the lessee was to pay one-third of the crop as rent, and then died during the existence of the lease. In *Cooper* the court stated unequivocally that the life tenant has an interest in the crop after it has commenced to grow which he might sell or mortgage and that his contract would be protected. It was a share that would descend or pass to the real owner whoever he might be. *Cooper* is important because it definitely establishes that the life tenant, as landlord, has an existing property right in a growing crop to the extent of the one-third crop share rent.

Finally, in *Sprick v. Beach,* supra, this court, in deciding the right to crops in a dispute between the grantee of a life tenant and a remainderman, held that the grantee was entitled to a crop which he had previously planted on the land before the death of the life tenant. The court refused to apportion the proceeds from the sale of the crop rent, stating that a more definite rule than a theory of apportionment should be established for deciding these cases and that anything stated in *Cooper* contrary to the views expressed in the opinion is disapproved. The court did, however,

state that the cases defendant cites are different because they involved leases and not outright sales. In the case now before us the district court, on the basis of *Sprick,* held that the entire proceeds from the one-third crop share rent were the property of the estate of the life tenant and that the remainderman had no interest therein.

We have concluded that the correct rule to be applied where a life tenant leases land for a share of the crop and dies before the crop is harvested is that the life tenant's estate is entitled to the entire crop share rent since under existing Kansas law his owner-ship in the landlord's share of the crop attaches after the crop is planted and his inchoate interest is one which he may sell before maturity of the crop and which ripens into full ownership with such maturity. In reaching this conclusion we have noted two Kansas statutes which recognize that a growing crop is to be considered on the death of the life tenant as *personal property,* not a part of the real estate, and that a landlord who leases his land for rent payable in a share of the crop is deemed to be the owner of such share and thus has an existing property interest therein. These statutes are as follows:

"**K.S.A. 58-2525. Same; lessor's remedies when rent payable in share of crop.** When any such rent is payable in a share or certain proportion of the crop, the lessor shall be deemed the owner of such share or proportion, and may, if the tenant refuse to deliver the lessor such share or proportion, enter upon the land and take possession of the same, or obtain possession thereof by action of replevin."

"**59-1206. Annual crops to be included.** Annual crops, whether severed or not from the land of the decedent at the time of death, shall be deemed personal assets in the custody of the executor or administrator and shall be inventoried and administered as such."

In *Pederson v. Russell State Bank, Executor,* 206 Kan. 718, 481 P.2d 986, this court stated that the disposition of growing crops in a decedent's estate cannot be made dependent upon whether the decedent had leased the land which she owned or was farming it herself, and that the provisions of 59-1206 make no such distinc-tion. In *Pederson* the court further approved the rule stated in *Cooper* that under K.S.A. 58-2525 the landlord's interest in growing crops is inchoate with the sowing of the seed in his ground and attaches to the growing grain. As such it is an asset of the landlord's estate.

So that there will be no question about the matter, that portion

of *Wyandt v. Merrill,* supra, which holds that a lessor's ownership of a growing crop where the rent is to be paid in a share of the crop does not attach until the maturity of the crop is hereby overruled. Such a conclusion is contrary to the express provisions of K.S.A. 58-2525 and the later cases cited above. Furthermore, that portion of *Cooper v. Cyr,* supra, which holds that there should be an apportionment between the estate of the life tenant and the remainderman of the proceeds of crop share rent is overruled. The rule of *Sprick v. Beach,* supra, is to be applied in cases involving leases with rent based on crop shares as well as in cases involving outright sales.

The judgment of the district court is affirmed.