No. 35,028

JOHN DEERE PLOW COMPANY, *Appellee*, v. S. G. KLAURENS, *Defendant;* W. H. ROBB and GRACE F. ROBB, *Appellants.*

(109 P. 2d 98)

Opinion filed January 25, 1941.

*C. L. Thompson,* of Hoxie, *Guido E. Smith* and *V. L. C. Smith,* both of Colby, for the appellants.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart,* all of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action on four promissory notes. From a verdict and judgment in favor of plaintiff the defendants appeal.

In 1929 S. G. Klaurens, of Menlo, desired to become the local dealer for farm implements manufactured by the plaintiff company. A certain amount of capital or financial responsibility was requisite before plaintiff would make a contract with him as its local dealer. Klaurens alone could not meet such requirement. He was the son-in-law of the defendants, Robb and wife, and they and Klaurens entered into two contracts with the plaintiff, both dated November 8, 1929. One of these was designated a general contract, and the other a "Tractor Contract." These contracts were signed thus:

> S. G. KLAURENS MTR. Co. (Dealer)
> W. H. ROBB
> S. G. KLAURENS
> GRACE F. ROBB

By the terms of these contracts, the dealer agreed to give promissory notes to the plaintiff for the wholesale price of farm implements supplied by plaintiff, and to deliver as collateral thereto the notes of the retail purchasers thereof. It was pursuant to these contracts that the four notes sued on were executed thus "S. G. Klaurens Motor Company, S. G. Klaurens," and delivered to the plaintiff.

Certain payments were credited to these notes and thereafter there were defaults, following which this action in four counts was begun.

In its petition plaintiff alleged that the defendants S. G. Klaurens, W. H. Robb and Grace F. Robb were copartners doing business

under the name and style of "S. G. Klaurens Motor Company."
The terms of those contracts were quite lengthy and only meager
excerpts therefrom are shown in the record, but paragraph
"thirtieth" contains the following:

"No agreements, conditions, stipulations other than those mentioned in this
contract, shall be of any force or effect unless approved in writing by an officer
of the plow company."

Defendants Robb and wife filed a verified answer in which they
denied the existence of the alleged partnership. They admitted that
they had signed the contracts of November 8, 1929, but that they
were induced so to do by a representative of the plaintiff, who
stated—

"That these defendants would assume no liability, or ever have anything to
pay and that the names were merely for the purpose of making the contract
look better. That defendants did not read said contract, relying on the truth
of the statements so made to them by the said representative of plaintiff . . .
and that these defendants . . . did sign said contract in full reliance upon
the truth of said statements, and would not have signed said contract, except
for the belief in the said statements."

Plaintiffs joined issues on the material allegations of the answer.
Various preliminary questions of law presented by the pleadings
were raised and disposed of, and the cause was tried before a jury.

Defendant Klaurens testified that his codefendants, Robb and
wife, had no interest in the S. G. Klaurens Motor Company, but
that they did sign the contracts, following which he did obtain
merchandise from plaintiff, and the four notes sued on were given
therefor.

W. H. Robb testified that he never notified the plaintiff that he
was not a partner of Klaurens, but that he knew plaintiff would
extend credit to the Klaurens Motor Company and that this was
why the contracts were signed.

A witness for plaintiff testified that he made the negotiations for
the plaintiff which resulted in the execution of the contracts of
November 8, 1929, and that—

"He [Robb] said he wanted to know, to have the same privilege of knowing
what was going on with the company as the dealer and for that reason signed
the contract so he would have that same opportunity to get information from
the company as Mr. Klaurens. . . . He said he would rather sign it as a
partner for that privilege, instead of a guarantor, and go all the way."

The jury returned a verdict in favor of plaintiff for the full
amount prayed for, but also found specially that when they signed
the contracts of November 8, 1929, they had no intention of be-
coming partners of their son-in-law, S. G. Klaurens, in the farm

implement business; that they contributed no money or capital to that business; that they rendered no service and did no work as partners of Klaurens; that they had neither shared the profits or losses of the business; and that they had done nothing (except to sign the contracts of November 8, 1929) to give plaintiff grounds to believe they were partners of S. G. Klaurens.

Judgment was entered accordingly and defendant Robb and wife appeal.

The first error urged relates to the admission of testimony given by plaintiff's credit manager to the effect that credit would not have been extended to Klaurens without the signatures of the Robbs. It is not easy to discover a valid objection to that testimony. The objection that it was self-serving is not good. Defendants had pleaded that they had signed the contracts in reliance on a statement by some agent of the company that they would assume no liability or ever have anything to pay, and that their names on the contract were merely to make it "look better." The *thirtieth* paragraph of the contract specifically recited that the approval of an officer of the company would be required to make it effective, and the manager's testimony, if not essential to the proof of plaintiff's cause of action, was certainly not incompetent. In *Bowers v. Railway Co.*, 82 Kan. 95, 107 Pac. 777, it was said:

"Where the motive, intent or belief of a person is a material fact to be ascertained, and he is a competent witness to prove such condition, he may testify to it directly in connection with his testimony detailing the circumstances and situation in which he was acting at the time." (Syl. ¶ 1.)

See, also, *Gardom v. Woodward*, 44 Kan. 758, 25 Pac. 199, and citations.

It is next urged that defendants were entitled to a directed verdict. We think not. While the contracts should be construed strictly against the plaintiff as the draftsman thereof, yet they must be construed as a whole, not by stressing some isolated provision thereof; and construing them in their entirety, a directed verdict for defendants was properly denied.

Error is also assigned on the court's instruction which, in part, read thus:

"No. 1. . . . The burden is upon the plaintiff to prove the allegations of its petition by a preponderance of the evidence. However, you are instructed that the plaintiff need not prove that the defendants were actually partners, as under the law a person is bound to know the contents of any written instrument which he signs and he is bound by the terms and provi-

sions thereof; so here, the defendants Robb are bound by the terms and provisions of the contracts they signed; and, if you find and believe that the plaintiff extended credit to the S. G. Klaurens Motor Company, as evidenced by the four notes sued on herein, in good faith relying upon the signatures of the Robbs to said contracts, then you should find for the plaintiff and against the defendants."

At the inception of this action plaintiff pleaded the existence of a partnership between Klaurens and the Robbs. When that allegation of partnership was denied under oath, the plaintiff had to fall back on the rule of law which holds that a person whose course of conduct leads another to believe he is a partner, and the party misled extends credit in reliance thereon, such person is liable *as if* he were a a partner in fact. (*Goetz v. Howland*, 139 Kan. 1, 30 P. 2d 101.) In *Sneider v. Big Horn Milling Co.*, 28 Wyo. 40, 200 Pac. 1011, this rule was thus stated:

"If one holds himself out as a partner in a firm then existing or commencing and obtains extension of credit to the partnership on the strength thereof, he is estopped to claim, as against liability for goods furnished, that he was not a partner." (Syl. ¶ 5.)

See, also, *Barnett Bank v. Chiatovich*, 48 Nev. 319, 232 Pac. 206; *Gwinnup v. Walton Trust Co.*, 69 Okla. 319, 172 Pac. 936.

Defendants next complain of the instruction (No. 1) which stated that they might be bound to the liability of partners although they were not such in fact. The instruction as given was pertinent to the pleadings and the evidence, and correctly applied the familiar rule of law as laid down in *Minneapolis-Moline Power Imp. Co. v. Beck*, 139 Kan. 245, 249, 30 P. 2d 1085. It was there said:

"It is settled law everywhere that one who puts his name to a written agreement cannot escape the binding force of his signature on the mere excuse that he assumed the blank spaces would be filled out according to his intention, nor on the excuse that he did not read its contents. (*Roach v. Karr*, 18 Kan. 529; *Custer v. Oliver*, 93 Kan. 760, 145 Pac. 554; 13 C. J. 308, 277, 370; 2 C. J. 1232-1244; 6 R. C. L. 624, 625; Restatement Contracts, § 442.)" (p. 249.)

It is next argued that defendants were entitled to judgment on the jury's special findings. This is merely another approach to the main question we have been considering. The specific findings merely said that Robb and wife were not partners of their son-in-law; but those findings did not and could not relieve them of the obligation of their written contracts of 1929. Fault is found with a remark made by the trial court to the effect that the pleadings would be considered "as amended to conform with the evidence." This practice is quite common. (*Custer v. Royse*, 104 Kan. 339,

343, 179 Pac. 353; *Lyons v. Petroleum Co.*, 114 Kan. 136, syl. ¶ 2, 215 Pac. 278; *Illinois Life Ins. Co. v. Young*, 118 Kan. 308, 322, 235 Pac. 104.) Moreover, we think the pleadings with the contracts attached as exhibits were quite sufficient to present the main issue for adjudication without amendment.

It is finally argued that the liability of defendants, if any, should have been considered as one upon an open account, and if so considered it would have been barred by the statute of limitations. But the inception of appellants' liability lay in their signatures to their written contracts of 1929. Predicated on those contracts plaintiff sold the merchandise to the S. G. Klaurens Motor Company on credit, and took its notes as evidence of the amounts due therefor. The resourcefulness of counsel who have sought to extricate appellants from the binding force of their contracts, as shown in this record, is remarkable. It is unavailing, however, because such contracts and their incidents and consequences are unavoidable. Were the law otherwise the execution of written contracts would be a sheer futility.

The judgment is affirmed.